**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>Trinseo PLC, *et al.,*<br><br>                    Debtors.[1] | Chapter 11<br><br>Case No. 26-90545 (CML)<br><br>Jointly Administered |
| THE AD HOC GROUP OF EXCLUDED OPCO TERM LENDERS,<br><br>                    Plaintiffs,<br><br>           v.<br><br>ALTER DOMUS (US) LLC; ANGELO, GORDON & CO., L.P.; APOLLO GLOBAL MANAGEMENT INC.; DEUTSCHE BANK AG NEW YORK BRANCH; OAKTREE CAPITAL MANAGEMENT L.P.; TPG AG PRIVATE CREDIT FINANCING 1 LLC; TRINSEO HOLDING S.À R.L.; TRINSEO LUXCO FINANCE SPV S.À R.L.; TRINSEO LUXCO S.À R.L.; AND TRINSEO MATERIALS FINANCE, INC.,<br><br>                    Defendants. | Adv. Pro. No. 26-03208 (CML) |

**TRINSEO HOLDING S.À R.L., TRINSEO LUXCO FINANCE
SPV S.À R.L., TRINSEO LUXCO S.À R.L., AND TRINSEO
<u>MATERIALS FINANCE, INC.'S ANSWER TO THE COMPLAINT</u>**

Defendants Trinseo Holding S.à r.l., Trinseo Luxco Finance SPV S.à r.l., Trinseo Luxco

S.à r.l., and Trinseo Materials Finance, Inc., as debtors and debtors in possession in the above-

---

[1]     A complete list of each of the Debtors in these chapter 11 cases (the "***Chapter 11 Cases***") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/trinseo.  The Debtors' mailing address is 440 East Swedesford Road, Suite 301, Wayne, PA 19087.

captioned chapter 11 cases (collectively, the "***Debtors***"), by their undersigned counsel, hereby answer (the "***Answer***") Plaintiffs, the Ad Hoc Group of Excluded OpCo Term Lenders[2] (collectively, the "***Plaintiffs***") Complaint For (I) Declaratory Relief Under the Relevant Credit Agreement, (II) Recharacterization of Certain Intercompany Loans, (III) Subordination of Claims Under Certain Intercompany Loans, and (IV) Subordination of Claims Under the Revolving Credit Facility (the "***Complaint***").

## PRELIMINARY STATEMENT

Except as specifically admitted, the Debtors deny the allegations in the Complaint. Unless otherwise noted, all references to a specified Paragraph refer to the numbered Paragraphs in the Complaint. Moreover, any factual averment that is admitted below is admitted only as to the Debtors and only as to the specific facts stated therein and not as to any conclusions, legal or otherwise, characterizations, implications, or speculation in the averment or the Complaint as a whole. To the extent that an averment includes a mix of alleged factual assertion and legal conclusion, the Debtors deny such commingled allegations except those that are specifically admitted.

## NATURE OF THE ACTION

1.     Paragraph 1 states the relief Plaintiffs seek and does not contain any factual allegations that the Debtors must admit or deny. To the extent a response is required, the Debtors admit that Plaintiffs accurately describe the form of the relief they purport to seek through their Complaint, but deny that Plaintiffs are entitled to any such relief. The Debtors otherwise deny the

---

[2]     The members of the Ad Hoc Group of Excluded OpCo Term Lenders are: CastleKnight Master Fund LP, Elevation CLO 2013-1, Ltd; Elevation CLO 2016-5, Ltd; Elevation CLO 2020-11, Ltd; Elevation CLO 2021-12, Ltd; Elevation CLO 2021-13, Ltd; Elevation CLO 2021-14, Ltd; Elevation CLO 2021-15, Ltd; Elevation CLO 2022-16, Ltd; Signal Peak CLO 4, Ltd.; Signal Peak CLO 5, Ltd.; Signal Peak CLO 7, Ltd.; Signal Peak CLO 8, Ltd.; Signal Peak CLO 9, Ltd.; Signal Peak CLO 10, Ltd.; and Signal Peak CLO 12, Ltd.

remaining allegations in this Paragraph.

2.      Paragraph 2 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the 2028 OpCo Term Loan, that loan agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that loan agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. To the extent that a response is required, the Debtors deny the allegations contained in this Paragraph.

3.      Paragraph 3 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the OpCo Credit Agreement,[3] that credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. The Debtors otherwise deny the remaining allegations in this Paragraph.

4.      Paragraph 4 contains allegations and/or conclusions to which no response is required. To the extent that a response is required, the Debtors deny the allegations contained in this Paragraph.

5.      The Debtors admit that, in connection with the September 2023 refinancing, Trinseo Luxco Finance SPV S.à r.l. ("*Luxco SPV*") was formed as a direct subsidiary of Trinseo PLC, and that Luxco SPV borrowed approximately $1.077 billion under the Super HoldCo Loan from the lenders party thereto at that time. To the extent this Paragraph describes the terms of the Super HoldCo Loan, that loan agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that loan agreement for a complete

---

[3]      Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Complaint.

and accurate statement of its terms and deny any allegations inconsistent therewith. To the extent that any additional response is required, the Debtors deny the allegations contained in this Paragraph.

6.      The Debtors admit that, in connection with the September 2023 refinancing, $125 million of proceeds from the Super HoldCo Loan was contributed to the OpCo Borrower as an equity contribution. To the extent this Paragraph describes the terms of the Super HoldCo Loan, that loan agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that loan agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. To the extent that any additional response is required, the Debtors deny the allegations contained in this Paragraph.

7.      The Debtors admit that, in connection with the September 2023 refinancing, the joint venture interest in Americas Styrenics LLC (the "*AmSty JV*") was contributed to entities designated as Unrestricted Subsidiaries under the OpCo Credit Agreement. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. To the extent that any additional response is required, the Debtors deny the allegations contained in this Paragraph.

8.      The Debtors admit that, in connection with the September 2023 refinancing, Trinseo NA Finance SPV LLC and Trinseo NA Finance LLC (collectively, the "*AmSty Unsubs*") guaranteed the Super HoldCo Loan, and that certain non-U.S. subsidiaries (the "*Foreign Guarantors*") issued a secured guaranty of the Super HoldCo Loan that, at the time, was capped at $340 million. To the extent this Paragraph describes the terms of the Super HoldCo Loan, that

loan agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that loan agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. To the extent that a response is required, the Debtors deny the allegations contained in this Paragraph.

9.    The Debtors admit that Luxco SPV lent approximately $948 million of the Super HoldCo Loan proceeds to the OpCo Borrower under the 2023 Intercompany Loan. To the extent this Paragraph describes the terms of the Super HoldCo Loan or the OpCo Credit Agreement, that loan agreement and credit agreement speak for themselves and their terms must be considered in context, including all amendments thereto. The Debtors refer to that loan agreement and credit agreement for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent that any additional response is required, the Debtors deny the allegations contained in this Paragraph.

10.    Paragraph 10 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the OpCo RCF and the ICA, those agreements speak for themselves. The Debtors refer to those agreements for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent that a response is required, the Debtors deny the allegations contained in this Paragraph.

11.    Paragraph 11 contains allegations and/or conclusions to which no response is required. To the extent that a response is required, the Debtors deny the allegations contained in this Paragraph.

12.    Paragraph 12 contains allegations and/or conclusions to which no response is required. To the extent that a response is required, the Debtors deny the allegations contained in this Paragraph.

13. Paragraph 13 contains allegations and/or conclusions to which no response is required. To the extent that a response is required, the Debtors deny the allegations contained in this Paragraph.

14. Paragraph 14 contains allegations and/or conclusions to which no response is required. To the extent that a response is required, the Debtors deny the allegations contained in this Paragraph.

15. Paragraph 15 contains allegations and/or conclusions to which no response is required. To the extent that a response is required, the Debtors deny the allegations contained in this Paragraph.

16. Paragraph 16 states the relief Plaintiffs seek and does not contain any factual allegations that the Debtors must admit or deny. To the extent a response is required, the Debtors deny the allegations in this Paragraph.

## JURISDICTION AND VENUE

17. Paragraph 17 states legal conclusions to which no response is required. To the extent a response is required, the Debtors admit that the Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b).

18. Paragraph 18 states legal conclusions to which no response is required. To the extent a response is required, the Debtors admit that venue is proper in this district.

19. Paragraph 19 asserts conclusions of law rather than allegations of fact, and thus no response is required.

20. Paragraph 20 asserts conclusions of law rather than allegations of fact, and thus no response is required.

## THE PARTIES

21.     The Debtors lack sufficient knowledge or information to admit or deny the allegations in Paragraph 21.

22.     The Debtors lack sufficient knowledge or information to admit or deny the allegations in Paragraph 22.

23.     The Debtors lack sufficient knowledge or information to admit or deny the allegations in Paragraph 23.

24.     The Debtors lack sufficient knowledge or information to admit or deny the allegations in Paragraph 24.

25.     The Debtors lack sufficient knowledge or information to admit or deny the allegations in Paragraph 25.

26.     The Debtors lack sufficient knowledge or information to admit or deny the allegations in Paragraph 26.

27.     The Debtors lack sufficient knowledge or information to admit or deny the allegations in Paragraph 27.

28.     The Debtors lack sufficient knowledge or information to admit or deny the allegations in Paragraph 28.

29.     The Debtors lack sufficient knowledge or information to admit or deny the allegations in Paragraph 29.

30.     The Debtors admit the allegations contained in Paragraph 30, except that they deny the allegations regarding Trinseo Holdings' registered office and that Trinseo Holdings is a wholly owned subsidiary of Trinseo S.A.

31.     The Debtors admit the allegations contained in Paragraph 31, except that they deny

7

the allegations regarding Luxco SPV's registered office and that Luxco SPV is an indirect wholly owned subsidiary of Trinseo PLC.

32.     The Debtors admit the allegations contained in Paragraph 32, except that they deny the allegations regarding Trinseo Luxco's registered office and that Trinseo Luxco is an indirect wholly owned subsidiary of Trinseo PLC.

33.     The Debtors admit the allegations contained in Paragraph 33, except that they deny the allegation that Trinseo Materials Finance, Inc. is a wholly owned subsidiary of Trinseo S.A.

34.     The Debtors admit the allegations contained in Paragraph 34.

35.     The Debtors admit their current corporate structure is shown in **Exhibit A** attached to the Complaint.

<strong>FACTUAL BACKGROUND</strong>

**I.     The Debtors**

36.     The Debtors admit that the Trinseo business (formerly known as Styron) began as a carveout from The Dow Chemical Company ("***Dow***") in 2009.

37.     The Debtors admit that they, together with their non-Debtor affiliates, operate 32 manufacturing plants and one recycling facility across 28 sites in 14 countries.

38.     The Debtors admit the allegations in Paragraph 38.

**II.    The OpCo Credit Group Enters the OpCo Credit Agreement, With Important Lender Protections**

39.     To the extent Paragraph 39 describes the terms of the OpCo Credit Agreement, that agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. The Debtors otherwise deny the remaining allegations in this Paragraph.

40.    The Debtors admit the allegations contained in Paragraph 40, except that the Debtors deny the allegation that the 2024 OpCo Term Loans were in the amount of $700 million and aver that, at the time of the 2023 LME, the aggregate principal amount of the 2024 OpCo Term Loans maturing in 2024 under the OpCo Credit Agreement was approximately $659.9 million. Except as expressly admitted herein, the Debtors deny the allegations of this Paragraph to the extent they allege or imply that the amount of the 2024 OpCo Term Loans was $700 million.

41.    The Debtors lack sufficient knowledge or information to admit or deny the allegations in Paragraph 41. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. The Debtors otherwise deny the allegations in this Paragraph.[4]

42.    Paragraph 42 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. The Debtors otherwise deny the allegations in this Paragraph.

43.    Paragraph 43 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that credit agreement speaks for itself and its terms must be considered in context, including all

---

[4]    The Complaint contains two Paragraphs numbered 41 and two Paragraphs numbered 42. The Debtors provide the same response to each Paragraph bearing those duplicate numbers, and such response is intended to apply to both Paragraphs as numbered in the Complaint.

amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. The Debtors otherwise deny the allegations in this Paragraph.

44. Paragraph 44 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. The Debtors otherwise deny the allegations in this Paragraph.

45. Paragraph 45 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. The Debtors otherwise deny the allegations in this Paragraph.

46. Paragraph 46 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

47. Paragraph 47 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that

credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. The Debtors otherwise deny the allegations in this Paragraph.

48.     Paragraph 48 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. The Debtors otherwise deny the allegations in this Paragraph.

49.     The Debtors deny that no sections of the OpCo Credit Agreement discussed in Paragraphs 39 through 48 of the Complaint have been amended.

### III.     Defendants Consummate the 2023 LME

50.     The Debtors admit that in the years following the OpCo Credit Agreement, they faced financial headwinds from geopolitical and macroeconomic events. The Debtors deny that, by the summer of 2023, their consolidated financial statements showed negative book equity. As of June 30, 2023, the Debtors reported total shareholders' equity of approximately $21.2 million[5] and Trinseo's common stock traded at approximately $12.00 per share during that period. The Debtors further admit that certain of their debt traded below par at various times. The Debtors otherwise deny the allegations in this Paragraph.

51.     The Debtors admit that by year-end 2022, they owed approximately $663.4 million on the 2024 OpCo Term Loans and approximately $500 million on the 2025 Unsecured Notes.

---

[5]     Trinseo PLC, Quarterly Report (Form 10-Q) 4 (Aug. 4, 2023)

The remainder of the Paragraph contains allegations and/or conclusions to which no response is required. To the extent a response is required, the Debtors deny the remaining allegations in this Paragraph.

52.     The Debtors admit that they engaged in discussions with an ad hoc group of 2028 OpCo Term Loan lenders in the referenced timeline. The remainder of the Paragraph contains allegations and/or conclusions to which no response is required. To the extent any additional response is required, the Debtors deny the remaining allegations in this Paragraph.

53.     The Debtors admit that in 2023, after a competitive process, the Debtors obtained $1.077 billion in financing from the Super HoldCo Lenders. To the extent an additional response is required, the Debtors deny the remaining allegations in this Paragraph.

### A.  The Steps of the 2023 LME

54.     The Debtors admit that they refinanced certain of their then-existing funded debt obligations through a refinancing transaction completed in September 2023. The Debtors admit that Luxco SPV borrowed approximately $1.077 billion under the Super HoldCo Loan from lenders party thereto at that time. To the extent this Paragraph purports to describe the terms of any agreements executed in connection with the September 2023 refinancing, those agreements speak for themselves and must be considered in context. The Debtors refer to those agreements for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors otherwise deny the allegations in this Paragraph.

55.     The Debtors admit that Luxco SPV loaned approximately $125 million to Trinseo Luxco. To the extent this Paragraph purports to describe the terms of any agreements executed in connection with the September 2023 refinancing, those agreements speak for themselves and must be considered in context. The Debtors refer to those agreements for a complete and accurate

statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors otherwise deny the allegations in this Paragraph.

56.     The Debtors admit that their interest in the AmSty JV was initially transferred to Trinseo NA Finance SPV LLC and subsequently to Trinseo NA Finance LLC. To the extent this Paragraph purports to describe the terms of any agreements executed in connection with the September 2023 refinancing, those agreements speak for themselves and must be considered in context. The Debtors refer to those agreements for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors otherwise deny the allegations in this Paragraph.

57.     To the extent this Paragraph purports to describe the terms of any agreements executed in connection with the September 2023 refinancing, those agreements speak for themselves and must be considered in context. The Debtors refer to those agreements for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

58.     The Debtors admit that Luxco SPV loaned approximately $948 million to the OpCo Borrower. The Debtors admit that the proceeds of the 2023 Intercompany Loan were used to repay debt obligations under the 2024 Term Loans and 2025 Unsecured Notes. To the extent this Paragraph purports to describe the terms of any agreements executed in connection with the September 2023 refinancing, those agreements speak for themselves and must be considered in context. The Debtors refer to those agreements for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors otherwise deny the allegations in this Paragraph.

59.     Paragraph 59 contains allegations and/or conclusions to which no response is required. To the extent a response is required, the Debtors deny the remaining allegations in this Paragraph.

### B.  A Precondition to the 2023 LME Was Not Met, Rendering the 2023 Amendment Ineffective

60.     To the extent this Paragraph purports to describe the terms of any agreements executed in connection with the September 2023 refinancing, those agreements speak for themselves and must be considered in context. The Debtors refer to those agreements for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. Further answering, the Debtors specifically deny that any Default existed or arose in connection with the September 2023 refinancing, deny that any precondition to the effectiveness of the 2023 Amendment was unsatisfied, and aver that the September 2023 refinancing, the 2023 Amendment, and the 2023 Intercompany Loan are valid and enforceable in accordance with their terms. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

61.     To the extent this Paragraph purports to describe the terms of any agreements executed in connection with the September 2023 refinancing, those agreements speak for themselves and must be considered in context. The Debtors refer to those agreements for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. Further answering, the Debtors specifically deny that any Restricted Payment was made in violation of Section 7.06 of the OpCo Credit Agreement in connection with the 2023 LME. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

62.     To the extent this Paragraph purports to describe the terms of any agreements executed in connection with the September 2023 refinancing, those agreements speak for themselves and must be considered in context. The Debtors refer to those agreements for a

14

complete and accurate statement of their terms and deny any allegations inconsistent therewith. Further answering, the Debtors specifically deny that the OpCo Borrower lacked sufficient Restricted Payments capacity at the time of the 2023 LME, deny that the Debtors' existing investment capacity for Restricted Payments and Restricted Investments was approximately $375 million before giving effect to any equity contribution, and deny that the AmSty Dropdown exceeded available basket capacity under the OpCo Credit Agreement. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

63.     To the extent this Paragraph purports to describe the terms of any agreements executed in connection with the September 2023 refinancing, those agreements speak for themselves and must be considered in context. The Debtors refer to those agreements for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. Further answering, the Debtors specifically deny that the Basket Capacity Equity Contribution constituted a Disqualified Equity Interest under the OpCo Credit Agreement. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

64.     The Debtors admit that certain Debtor entities made an approximately $125 million equity contribution to other certain Debtor entities in connection with the 2023 refinancing. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. The Debtors specifically deny the Complaint's alternative allegation that the same $125 million was, or should be treated as, both an equity contribution (for basket-capacity purposes) and an intercompany loan, and deny that the Basket Capacity Equity Contribution was "disqualified" or did not constitute equity. To the extent any

15

additional response is required, the Debtors deny the allegations in this Paragraph.

65.     Paragraph 65 contains allegations and/or conclusions to which no response is required. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

66.     Paragraph 66 contains allegations and/or conclusions to which no response is required. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

67.     Paragraph 67 contains allegations and/or conclusions to which no response is required. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

68.     Paragraph 68 contains allegations and/or conclusions to which no response is required. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

### C. Conflicted Fiduciaries Executed the 2023 LME for the Improper Purpose of Manufacturing a Bankruptcy Claim for the Super HoldCo Lenders

69.     The Debtors deny the allegations in Paragraph 69.

70.     The Debtors deny the allegations in Paragraph 70.

71.     The Debtors deny the allegations in Paragraph 71.

72.     The Debtors deny the allegations in Paragraph 72.

73.     The Debtors admit that the 2024 Term Loans, the 2025 Unsecured Notes, and the Super HoldCo Loan bore the approximate interest rates and maturities reflected in their respective transaction documents. The Debtors further state that the refinancing transactions were consummated following a competitive financing process and reduced the aggregate principal amount of the debt being refinanced. The Debtors refer to those transaction documents for a

16

complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

74. The Debtors admit that the Super HoldCo Loan bore interest at SOFR plus 8.50% (subject to a 3.00% SOFR floor) with a payable in kind option as set forth in the relevant agreement. The Debtors refer to that relevant agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

75. The Debtors deny the allegations in Paragraph 75.

76. The Debtors deny the allegations in Paragraph 76.

77. The Debtors deny the allegations in Paragraph 77.

78. The Debtors refer to the relevant agreement for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in Paragraph 78.

79. The Debtors admit that Luxco SPV did not lend money to any entity other than the OpCo Loan Parties. To the extent any additional response is required, the Debtors deny the allegations in Paragraph 79.

**IV. Using the Invalid Votes of Luxco SPV as Intercompany Lender, Defendants Consummate the 2025 LME**

80. The Debtors admit the assertions in Paragraph 80 as to the approximate post-2023 LME capital structure. The Debtors refer to the relevant transaction documents for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

81. The Debtors admit that the Debtors' financial performance continued to be

challenged in 2024 and that the Debtors' debt traded below par at various times. The Debtors further admit that their FY2024 financial statements as of December 31, 2024 reflected negative book equity and negative free cash flow of approximately $77.5 million.[6] To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

82.     The Debtors admit that the 2025 LME was undertaken in part to retire the remaining 2025 Unsecured Notes and to address certain 2029 Unsecured Notes. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

### A.  The Steps of the 2025 LME

83.     The Debtors deny that the 2023 Amendment was invalid or that any preexisting default existed. The Debtors admit that the 2025 LME was documented through, among other documents, the 2025 Amendment. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

84.     The Debtors deny the allegations in Paragraph 84.

85.     The Debtors admit that Aristech Surfaces LLC and Altuglas LLC were designated as Unrestricted Subsidiaries in accordance with the OpCo Credit Agreement and that they guarantee the Super HoldCo debt. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

86.     The Debtors admit that approximately $447 million of 2029 Unsecured Notes were exchanged for new second-lien notes at 85% of par on the terms described. The Debtors refer to the relevant transaction documents for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

---

[6]    Trinseo PLC, Annual Report (Form 10-K) 54 (Feb. 27, 2025)

87.     The Debtors admit that the 2025 refinancing included the provision of intercompany term loans in an aggregate principal amount of approximately $494 million. The Debtors refer to the relevant transaction documents for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

88.     The Debtors admit that the existing revolving credit facility was replaced with a new $300 million revolving credit facility. The Debtors refer to the relevant transaction documents for a complete and accurate statement of their terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the remaining allegations in this Paragraph.

89.     The Debtors admit that the Guarantee Limit on the Foreign Guaranty was eliminated as part of the 2025 LME. To the extent any additional response is required, the Debtors deny the remaining allegations in this Paragraph.

90.     The Debtors deny the allegations in Paragraph 90.

91.     The Debtors deny the allegations in Paragraph 91.

**B.  The Off-Market ICA**

92.     The Debtors deny the allegations in Paragraph 92.

93.     The Debtors admit that the Intercreditor Agreement was entered into in connection with the 2025 LME and that Deutsche Bank acted in its capacity as agent thereunder. The Debtors refer to the Intercreditor Agreement for a complete and accurate statement of its terms, which speak for themselves, and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the remaining allegations and characterizations in this Paragraph.

94.     Paragraph 94 contains characterizations of purportedly 'typical' intercreditor

19

agreements, to which no response is required. To the extent a response is required, the Debtors deny the allegations in this Paragraph.

95. The Debtors refer to the Intercreditor Agreement for a complete and accurate statement of its terms, which speak for themselves, and deny any allegations or characterizations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in Paragraph 95.

96. The Debtors refer to the Intercreditor Agreement for a complete and accurate statement of its terms, which speak for themselves, and deny any allegations or characterizations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

**C. The 2025 Amendment and ICA are Void**

97. Paragraph 97 contains allegations and/or conclusions to which no response is required. To the extent this Paragraph describes the terms of the OpCo Credit Agreement, that credit agreement speaks for itself and its terms must be considered in context, including all amendments thereto. The Debtors refer to that credit agreement for a complete and accurate statement of its terms and deny any allegations inconsistent therewith. To the extent any additional response is required, the Debtors deny the allegations in this Paragraph.

98. The Debtors admit that the loans held by Luxco SPV were used to secure Required Lender approval for the Four-Party ICA and the related amendment to the OpCo Credit Agreement, but otherwise deny the allegations in Paragraph 98.

99. The Debtors deny the allegations in Paragraph 99.

100. The Debtors deny the allegations in Paragraph 100.

**D.   The Conflicted Fiduciaries Enter and Approve the 2025 LME—Including the 2025 Intercompany Loan**

101.   The Debtors deny the allegations in Paragraph 101.

102.   The Debtors deny the allegations in Paragraph 102.

103.   The Debtors deny the allegations in Paragraph 103.

**E.   Defendants Continue to Prejudice the AHG**

104.   The Debtors admit that S&P published a report following the 2025 LME containing the quoted language. The Debtors refer to the report for a complete and accurate statement of its contents, which speak for themselves, and deny any allegations or characterizations inconsistent therewith. To the extent any additional response is required, the Debtors deny the remaining allegations and characterizations in this Paragraph.

105.   The Debtors admit that they reported a net loss and negative free cash flow for 2025. The Debtors refer to their financial statements for a complete and accurate statement of their contents, which speak for themselves, and deny any allegations or characterizations inconsistent therewith. To the extent any additional response is required, the Debtors deny the remaining allegations in this Paragraph.

106.   The Debtors admit, upon information and belief, that the New York Stock Exchange notified Trinseo PLC regarding continued listing standards in or about December 2025 and that S&P adjusted its rating around that time. The Debtors refer to the underlying notices and reports for a complete and accurate statement of their contents, which speak for themselves, and deny any allegations or characterizations inconsistent therewith. To the extent any additional response is required, the Debtors deny the remaining allegations in this Paragraph.

107.   The Debtors admit the allegations contained in Paragraph 107.

108.   The Debtors deny the allegations in Paragraph 108.

21

109.     The Debtors admit that certain Super HoldCo Lenders acquired interests in the OpCo RCF. To the extent any additional response is required, the Debtors deny the remaining allegations in this Paragraph.

110.     The Debtors admit that a draw was made on the OpCo RCF and that the proceeds were used in accordance with the terms of the relevant agreements. The Debtors refer to the relevant agreements for a complete and accurate statement of their terms, which speak for themselves, and deny any allegations or characterizations inconsistent therewith. The Debtors further deny the allegation that the OpCo Credit Group received no consideration in connection with intercompany transactions. To the extent any additional response is required, the Debtors deny the remaining allegations and characterizations in this Paragraph.

111.     The Debtors deny the allegations in Paragraph 111.

112.     The Debtors deny the allegations in Paragraph 112.

113.     The Debtors deny the allegations in Paragraph 113.

## COUNT I — DECLARATORY JUDGMENT

114.     The Debtors incorporate by reference their responses to each preceding Paragraph as if fully set forth herein.

115.     Paragraph 115 cites legal authorities that speak for themselves, to which no response is required.

116.     The Debtors admit the allegations contained in Paragraph 116.

117.     The Debtors deny the allegations in Paragraph 117.

118.     The Debtors deny the allegations in Paragraph 118.

119.     The Debtors deny the allegations in Paragraph 119.

120.     The Debtors admit that an actual controversy exists in the limited sense necessary to confer subject-matter jurisdiction. The Debtors deny that Plaintiffs are entitled to any of the

declaratory relief sought in subparts (1), (2), or (3) of Paragraph 120.

### COUNT II — RECHARACTERIZATION

121.     The Debtors incorporate by reference their responses to each preceding Paragraph as if fully set forth herein.

122.     The Debtors deny the allegations in Paragraph 122, including each of subparts (a) through (g).

123.     The Debtors deny the allegations in Paragraph 123.

124.     The Debtors deny the allegations in Paragraph 124.

### COUNT III — EQUITABLE SUBORDINATION (INTERCOMPANY LOANS)

125.     The Debtors incorporate by reference their responses to each preceding Paragraph as if fully set forth herein.

126.     Paragraph 126 cites legal authorities that speak for themselves to which no response is required.

127.     The Debtors deny the allegations in Paragraph 127.

128.     The Debtors deny the allegations in Paragraph 128.

129.     The Debtors deny the allegations in Paragraph 129.

130.     The Debtors deny the allegations in Paragraph 130.

131.     The Debtors deny the allegations in Paragraph 131.

132.     The Debtors deny the allegations in Paragraph 132.

133.     The Debtors deny the allegations in Paragraph 133.

### COUNT IV — EQUITABLE SUBORDINATION (RCF)

134.     The Debtors incorporate by reference their responses to each preceding Paragraph as if fully set forth herein.

135.     Paragraph 135 cites legal authorities that speak for themselves to which no response

is required.

136.    The Debtors deny the allegations in Paragraph 136, including subparts (a) and (b).

137.    The Debtors deny the allegations in Paragraph 137.

138.    The Debtors deny the allegations in Paragraph 138.

139.    The Debtors deny the allegations in Paragraph 139.

## PRAYER FOR RELIEF

The Debtors deny that Plaintiffs are entitled to any of the relief requested in subparts (a) through (h) of the Prayer for Relief, or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

The Debtors assert the following affirmative defenses. The Debtors do not admit that they bear the burden of proof, persuasion, or production with respect to any issue. The Debtors reserve the right to assert any additional defenses not asserted herein, including those revealed through discovery, further investigation, amendment of the Complaint, or otherwise.

## FIRST AFFIRMATIVE DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), made applicable by Bankruptcy Rule 7012.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part under that certain Mutual Release Agreement dated as of January 17, 2025.

## THIRD AFFIRMATIVE DEFENSE

The 2023 LME, the 2023 Amendment, the 2023 Intercompany Loan, the 2025 LME, the 2025 Amendment, the 2025 Intercompany Loan, the OpCo RCF, and the ICA were each consummated in compliance with the express terms of the OpCo Credit Agreement and the other Loan Documents.

24

## FOURTH AFFIRMATIVE DEFENSE

No Default or Event of Default occurred or was caused by any of the challenged transactions, and no Restricted Payment was made in violation of Section 7.06 of the OpCo Credit Agreement; the Basket Capacity Equity Contribution did not constitute a Disqualified Equity Interest, and the AmSty Unsubs' guaranty of the Super HoldCo Loan was not a distribution "with respect to" Equity Interests in the OpCo Borrower.

## FIFTH AFFIRMATIVE DEFENSE

The Intercompany Loans are bona fide indebtedness, properly documented, properly authorized, and reflected on the Debtors' books and records as such; they are not subject to recharacterization under Bankruptcy Code §§ 105(a) or 502.

## SIXTH AFFIRMATIVE DEFENSE

The Debtors engaged in no inequitable conduct warranting equitable subordination under Bankruptcy Code § 510(c); their conduct was undertaken in good faith, for valid business purposes, and in accordance with applicable contractual and fiduciary obligations.

## SEVENTH AFFIRMATIVE DEFENSE

The Super HoldCo Lenders are not insiders of the Debtors within the meaning of Bankruptcy Code § 101(31), and their conduct neither caused harm to Plaintiffs nor conferred an unfair advantage on the Super HoldCo Lenders over the Debtors' other creditors.

## EIGHTH AFFIRMATIVE DEFENSE

The challenged transactions were authorized, consented to, certified, and/or ratified by the administrative agent, the Required Lenders, and the Debtors' boards and officers, as and to the extent contractually required; Plaintiffs (or the lenders Plaintiffs represent) had notice and an opportunity to object and failed timely to do so. Further, Plaintiffs' claims are barred by their

25

express contractual consent to the challenged transactions, including under Section 1.17 of the OpCo Credit Agreement, which authorizes the transactions and structural features Plaintiffs now challenge. As holders of OpCo Term Loans governed by the OpCo Credit Agreement, Plaintiffs and the lenders they purport to represent are bound by that provision and are deemed to have consented in advance to the 2023 LME, the 2023 Amendment, the 2023 Intercompany Loan, the 2025 LME, the 2025 Amendment, the 2025 Intercompany Loan, the OpCo RCF, and the ICA effected in reliance thereon. Plaintiffs are therefore deemed to have consented to, and are estopped from challenging, the transactions effected in reliance on those provisions.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, ratification, acquiescence and in pari delicto, including among other reasons by reason of Plaintiffs' delay in asserting the alleged breaches first arising in September 2023.

## TENTH AFFIRMATIVE DEFENSE

Unclean Hands and In Pari Delicto: Plaintiffs' equitable claims, including the recharacterization and equitable subordination claims, are barred by the doctrines of unclean hands and in pari delicto.

## ELEVENTH AFFIRMATIVE DEFENSE

No Standing / Derivative Claims: Plaintiffs lack standing to assert certain claims, including any claims that are derivative of the Debtors' estates and that may be asserted only by the Debtors, a trustee, or a duly authorized estate representative.

## TWELFTH AFFIRMATIVE DEFENSE

The decisions of the directors and officers of the Trinseo entities in connection with the challenged transactions are protected by the business judgment rule.

26

### THIRTEENTH AFFIRMATIVE DEFENSE

Reliance on Agent and Professionals: The transactions were entered into in reasonable reliance on the determinations, certifications, and opinions of the administrative agent, counsel, and other professionals.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have suffered no cognizable damages, and any alleged damages were not proximately caused by any act or omission of the Debtors.

### FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' request for rescissory damages and other equitable remedies is speculative, unripe, and unsupported.

### SIXTEENTH AFFIRMATIVE DEFENSE

The claims against Alter Domus (US) LLC and Deutsche Bank AG New York Branch, in their capacities as agent, are barred or limited by the exculpation, indemnification, and limitation-of-liability provisions of the OpCo Credit Agreement and ICA.

### SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claim that various agreements may be declared "*void ab initio*" is invalid as a matter of law.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiffs lack standing to bring these claims under the no-action provisions of the OpCo Credit Agreement including because Section 8.02 vests the right to exercise remedies exclusively in the Administrative Agent.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' damages claims are barred in whole and in part by Plaintiffs' failure to mitigate

any damages.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims, in whole or in part, including without limitation any request for rescission, rescissory damages, or other monetary relief premised on the 2023 LME, the 2023 Amendment, or the 2023 Intercompany Loan, are barred by the applicable statutes of limitations, including without limitation CPLR §§ 213(1), 213(2), and 213(8), and analogous provisions of any other potentially applicable law. The transactions Plaintiffs challenge closed in September 2023, and Plaintiffs and the lenders they purport to represent had actual or constructive notice of the structure, terms, and alleged effects of those transactions at or shortly after closing.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims, including without limitation any claim for declaratory relief, rescission, rescissory damages, recharacterization, or subordination that, in substance or effect, seeks to avoid, unwind, or recover on account of transfers made by or to the Debtors (or any of their affiliates) in connection with a securities contract—including the 2025 exchange of 2029 Unsecured Notes for new second-lien notes and any related settlement payments—are barred by section 546(e) of the Bankruptcy Code because each such transfer was a settlement payment or a transfer made by, to, or for the benefit of a financial institution, financial participant, securities clearing agency, stockbroker, or other entity protected by section 546(e), in connection with a securities contract.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, ratification, and affirmative consent, including without limitation by reason of the express terms of the Intercreditor Agreement and the other Loan Documents to which Plaintiffs (or the predecessor holders of the loans Plaintiffs now own) are bound. Plaintiffs and their predecessors-

28

in-interest expressly agreed to, or are deemed to have agreed to, the priority, payment, enforcement, buy-out, and DIP-financing provisions of the Intercreditor Agreement and the other Loan Documents that they now challenge, and are bound by those agreements and estopped from asserting claims inconsistent with them.

<strong><u>TWENTY-THIRD AFFIRMATIVE DEFENSE</u></strong>

Without prejudice to the Second Affirmative Defense, and to the extent any provision of the Mutual Release Agreement dated as of January 17, 2025 is held unenforceable, narrowed, rescinded, set aside, or otherwise determined not to bar any claim asserted in the Complaint, the Debtors expressly reserve, and do not waive, all rights, claims, defenses, counterclaims, setoff, recoupment, and remedies that the Debtors would have had absent the Mutual Release, including without limitation against Plaintiffs, the lenders they purport to represent, and their respective affiliates, predecessors, successors, and assigns.

<strong><u>TWENTY-FOURTH AFFIRMATIVE DEFENSE</u></strong>

The Complaint is void and/or unenforceable to the extent it purports to obtain possession of, exercise control over, or otherwise affect property of the bankruptcy estate in violation of the automatic stay under 11 U.S.C. § 362(a).

<strong><u>TWENTY-FIFTH AFFIRMATIVE DEFENSE</u></strong>

Plaintiffs' claims are barred to the extent they seek relief not authorized by the applicable contracts, including equitable and other non-contractual remedies. Any remedy available to Plaintiffs is limited to that permitted under the governing agreements and applicable law.

<strong><u>TWENTY-SIXTH AFFIRMATIVE DEFENSE</u></strong>

The Debtors reserve the right to amend this Answer and to assert additional affirmative and other defenses as may become apparent during the course of this proceeding.

29

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, the Debtors respectfully request that this Court enter judgment in their favor and against Plaintiffs as follows: (a) dismissing the Complaint in its entirety, with prejudice; (b) denying each and every form of relief sought in the Complaint, including the relief requested in subparts (a) through (h) of the Prayer for Relief; (c) declaring, to the extent appropriate, that the 2023 LME, the 2023 Amendment, the 2023 Intercompany Loan, the 2025 LME, the 2025 Amendment, the 2025 Intercompany Loan, the OpCo RCF, and the ICA are valid, binding, and enforceable in accordance with their terms; (d) awarding the Debtors their costs, expenses, and attorneys' fees as permitted by contract and applicable law; and (e) granting such other and further relief as the Court deems just and proper.

Dated: June 4, 2026
Houston, Texas

Respectfully submitted,

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (TX Bar No. 24012503)
Philip M. Guffy (TX Bar No. 24113705)
Timothy R. Powell (TX Bar No. 24119198)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 220-4200
Email: taddavidson@hunton.com
pguffy@hunton.com
tpowell@hunton.com

– and –

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Ryan Preston Dahl (NY Bar No. 5697461)
George Klidonas (NY Bar No. 4549432)
Jonathan J. Weichselbaum (NY Bar No. 5676143)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:   ray.schrock@lw.com
ryan.dahl@lw.com
george.klidonas@lw.com
jon.weichselbaum@lw.com

– and –

Benjamin M. Rhode (IL Bar No. 6310000)
330 N. Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  (312) 876-7700
Email:   benjamin.rhode@lw.com

*Proposed Co-Counsel for the Debtors
 and Debtors in Possession*

**<u>CERTIFICATE OF SERVICE</u>**

   I certify that on June 4, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices in this adversary proceeding.

*/s/ Timothy A. ("Tad") Davidson II*    
Timothy A. ("Tad") Davidson II
