**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>TRINSEO PLC., *et al.*,<br><br>Debtors. [1] | Chapter 11<br><br>Case No. 26-90545 (CML)<br><br>(Jointly Administered) |
| CASTLEKNIGHT MASTER FUND LP; ELEVATION CLO 2013-1, LTD; ELEVATION CLO 2016-5, LTD; ELEVATION CLO 2020-11, LTD; ELEVATION CLO 2021-12, LTD; ELEVATION CLO 2021-13, LTD; ELEVATION CLO 2021-14, LTD; ELEVATION CLO 2021-15, LTD; ELEVATION CLO 2022-16, LTD; SIGNAL PEAK CLO 4, LTD.; SIGNAL PEAK CLO 5, LTD.; SIGNAL PEAK CLO 7, LTD.; SIGNAL PEAK CLO 8, LTD.; SIGNAL PEAK CLO 9, LTD.; SIGNAL PEAK CLO 10, LTD.; AND SIGNAL PEAK CLO 12, LTD.,<br><br>Plaintiffs,<br><br>– against –<br><br>APOLLO ACCORD+ II AGGREGATOR A, L.P.; APOLLO CALLIOPE FUND L.P.; APOLLO CENTRE STREET PARTNERSHIP, L.P.; APOLLO EXCELSIOR CO-INVEST, L.P.; APOLLO LINCOLN FIXED INCOME FUND, L.P.; APOLLO MOULTRIE CREDIT FUND, L.P.; AG CREDIT SOLUTIONS MASTER FUND II A, L.P.; TPG AG CORPORATE CREDIT OPPORTUNITIES FUND, L.P.; TPG AG CREDIT SOLUTIONS AVANTI CO-INVEST, L.P.; AG CATALOOCHEE, L.P.; AG CSF 2023 OVERFLOW FUND (G) LP; AG POTOMAC FUND, L.P.; TPG AG CENTRE STREET PARTNERSHIP, L.P.; TPG DYNAMIC CREDIT INCOME MASTER FUND, L.P.; AG CREDIT SOLUTIONS FUND II CO-INVESTMENT, L.P.; OAKTREE OPPORTUNITIES FUND XI | Adv. Proc. No. 26-03208 |

---

[1]     A complete list of each of the Debtors in these chapter 11 cases (the "Bankruptcy Cases") and the last four digits of each Debtor's taxpayer identification number (if applicable) may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/trinseo/. The Debtors' mailing address is 440 East Swedesford Road, Suite 301, Wayne, PA 19087.

HOLDINGS (DELAWARE), L.P.; OAKTREE OPPORTUNITIES FUND XII HOLDINGS (DELAWARE), L.P.; TRINSEO HOLDING S.À.R.L.; TRINSEO LUXCO FINANCE SPV S.À.R.L.; TRINSEO LUXCO S.À.R.L.; AND TRINSEO MATERIALS FINANCE, INC.,

Defendants.

## OPCO SENIOR RCF LENDER DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND RESTATED COUNTERCLAIM TO FIRST AMENDED ADVERSARY COMPLAINT

Defendants in the above-captioned adversary proceeding, herein referred to as the OpCo Senior RCF Lender Defendants,[2] hereby answer, and assert affirmative defenses (this "Answer") in response to, the First Amended Adversary Proceeding Complaint [Adv. Docket No. 26] filed by Plaintiffs CastleKnight Master Fund LP; Elevation CLO 2013-1, LTD; Elevation CLO 2016-5, LTD; Elevation CLO 2020-11, LTD; Elevation CLO 2021-12, LTD; Elevation CLO 2021-13, LTD; Elevation CLO 2021- 14, LTD; Elevation CLO 2021-15, LTD; Elevation CLO 2022-16, LTD; Signal Peak CLO 4, LTD.; Signal Peak CLO 5, LTD.; Signal Peak CLO 7, LTD.; Signal Peak CLO 8, LTD.; Signal Peak CLO 9, LTD.; Signal Peak CLO 10, LTD.; and Signal Peak CLO 12, LTD. (the "OpCo Junior Term Lender Plaintiffs"). The OpCo Senior RCF Lender Defendants also restate herein their counterclaim ("Counterclaim") against the OpCo Junior Term Lender Plaintiffs.

---

[2]     The term "OpCo Senior RCF Lender Defendants" means and refers to Apollo Accord+ II Aggregator A, L.P.; Apollo Calliope Fund L.P.; Apollo Centre Street Partnership, L.P.; Apollo Excelsior Co-Invest, L.P.; Apollo Lincoln Fixed Income Fund, L.P.; Apollo Moultrie Credit Fund, L.P. (together, the "Apollo Defendants"); AG Credit Solutions Master Fund II A, L.P.; TPG AG Corporate Credit Opportunities Fund, L.P.; TPG AG Credit Solutions Avanti Co-Invest, L.P.; AG Cataloochee, L.P.; AG CSF 2023 Overflow Fund (G) LP; AG Potomac Fund, L.P.; TPG AG Centre Street Partnership, L.P.; TPG Dynamic Credit Income Master Fund, L.P.; AG Credit Solutions Fund II Co-Investment, L.P. (together, the "TPG-AG Defendants"); and Oaktree Opportunities Fund XI Holdings (Delaware), L.P.; and Oaktree Opportunities Fund XII Holdings (Delaware), L.P. (together, the "Oaktree Defendants," and collectively, with the Apollo and TPG-AG Defendants, the "OpCo Senior RCF Lender Defendants").

**ANSWER**

The OpCo Senior RCF Lender Defendants, by and through their undersigned counsel, answer the amended claims asserted by the OpCo Junior Term Lender Plaintiffs as follows:

**NATURE OF THE ACTION**

1.      Paragraph 1 states legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 1 also purports to characterize and describe the OpCo Credit Agreement and the proposed chapter 11 plan, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations in Paragraph 1.

2.      Paragraph 2 purports to characterize the Debtors' financial condition and available options for additional funding, as to which Defendants lack knowledge or information sufficient to form a belief as to the truth of such characterizations, and on that basis deny them. Defendants admit that the Debtors undertook a refinancing transaction in 2023, but otherwise deny the allegations in Paragraph 2.

3.      Paragraph 3 purports to characterize and describe the OpCo Credit Agreement and its terms, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants admit that Trinseo Materials Operating S.C.A. ("Trinseo Materials") was the corporate parent of all the operating subsidiaries of the Debtors in 2023, but otherwise deny the allegations in Paragraph 3.

4.      Defendants deny the allegations in Paragraph 4.

5.      Defendants admit that Trinseo Luxco Finance SPV S.à.r.l. ("Luxco SPV") was created to facilitate a refinancing transaction in 2023 and to borrow $1.077 billion from certain lenders, but otherwise deny the allegations in Paragraph 5.

6.      Defendants admit that Trinseo Holding S.à.r.l. ("Trinseo Holdings") made a cash contribution for $125 million of equity of Trinseo Materials, but otherwise deny the allegations in Paragraph 6.

7.      Defendants admit that (i) the 50% interests in Americas Styrenics LLC held by Trinseo LLC (the "AmSty Equity") was a material asset of Trinseo LLC, (ii) Trinseo LLC transferred the AmSty Equity to its direct subsidiary, Trinseo NA Finance LLC, which transferred the AmSty Equity to its direct subsidiary, Trinseo NA Finance SPV LLC, and (iii) Trinseo NA Finance LLC and Trinseo NA Finance SPV LLC are "Unrestricted Subsidiaries" under the OpCo Credit Agreement, but otherwise deny the allegations in Paragraph 7.

8.      Defendants admit that Trinseo NA Finance SPV LLC was a co-borrower under the Super HoldCo Loans (as defined in Paragraph 5 of the Complaint), but otherwise deny the allegations in Paragraph 8.

9.      Defendants admit that Luxco SPV made intercompany loans of approximately $948 million under the OpCo Credit Agreement in 2023, but otherwise deny the allegations in Paragraph 9.

10.     Defendants admit that (i) Luxco SPV made intercompany loans of approximately $494 million under the OpCo Credit Agreement in 2025, (ii) the "Loan Parties" as defined in the OpCo Credit Agreement (the "OpCo Loan Parties") entered into new revolving credit facility in 2025 (the "OpCo Senior RCF") with an extended maturity and materially increased availability, (iii) the OpCo Senior RCF was subject to an intercreditor agreement under which it had "super-priority" over all other funded indebtedness of the OpCo Loan Parties, and (iv) the Four-Party ICA (as defined in Paragraph 121 hereof) provided that all holders of Super HoldCo Loans ("Super HoldCo Lenders") had a customary buyout right over the OpCo Senior RCF upon acceleration of

or payment default under the OpCo Senior RCF or the commencement of an insolvency proceeding, but otherwise deny the allegations in Paragraph 10.

11. Defendants admit that they purchased substantially all of the obligations under the OpCo Senior RCF at par value while Defendants engaged in restructuring negotiations with the Debtors, but otherwise deny the allegations in Paragraph 11. Paragraph 11 purports to characterize documents produced in discovery, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations in Paragraph 11.

12. Paragraph 12 purports to characterize the proposed chapter 11 plan, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 12.

13. Paragraph 13 states legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations.

14. Paragraph 14 states legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations.

15. Paragraph 15 states legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations.

16. Defendants admit that Plaintiffs brought this action and seek relief against Defendants, but otherwise deny the allegations in Paragraph 16.

## JURISDICTION AND VENUE

17. Paragraph 17 states legal conclusions as to which no response is required. To the extent a response is required, Defendants admit that the Court has subject-matter jurisdiction over this adversary proceeding but otherwise deny the allegations in Paragraph 17.

18. Defendants admit the allegations in Paragraph 18.

19.     Paragraph 19 states legal conclusions as to which no response is required.

20.     Paragraph 20 states legal conclusions as to which no response is required.

## THE PARTIES

21.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

22.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.     The Apollo Defendants admit that Apollo Accord+ II Aggregator A, L.P. is an exempted limited partnership formed under the laws of the Cayman Islands. Paragraph 24 otherwise states legal conclusions as to which no response is required.

25.     The Apollo Defendants admit that Apollo Calliope Fund, L.P. is an exempted limited partnership formed under the laws of the Cayman Islands. Paragraph 25 otherwise states legal conclusions as to which no response is required.

26.     The Apollo Defendants admit that Apollo Centre Street Partnership, L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 26 otherwise states legal conclusions as to which no response is required.

27.     The Apollo Defendants admit that Apollo Excelsior Co-Invest, L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 27 otherwise states legal conclusions as to which no response is required.

6

28.     The Apollo Defendants admit that Apollo Lincoln Fixed Income Fund, L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 28 otherwise states legal conclusions as to which no response is required.

29.     The Apollo Defendants admit that Apollo Moultrie Credit Fund, L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 29 otherwise states legal conclusions as to which no response is required.

30.     The TPG-AG Defendants admit that AG Credit Solutions Master Fund II A, L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 30 otherwise states legal conclusions as to which no response is required.

31.     The TPG-AG Defendants admit that TPG AG Corporate Credit Opportunities Fund, L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 31 otherwise states legal conclusions as to which no response is required.

32.     The TPG-AG Defendants admit that TPG AG Credit Solutions Avanti Co-Invest, L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 32 otherwise states legal conclusions as to which no response is required.

33.     The TPG-AG Defendants admit that AG Cataloochee, L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 33 otherwise states legal conclusions as to which no response is required.

34.     The TPG-AG Defendants admit that AG CSF 2023 Overflow Fund (G) LP is an exempted limited partnership formed under the laws of the Cayman Islands. Paragraph 34 otherwise states legal conclusions as to which no response is required.

35.     The TPG-AG Defendants admit that AG Potomac Fund, L.P. is a limited partnership organized under the laws of the State of Delaware.  Paragraph 35 otherwise states legal conclusions as to which no response is required.

36.     The TPG-AG Defendants admit that TPG AG Centre Street Partnership, L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 36 otherwise states legal conclusions as to which no response is required.

37.     The TPG-AG Defendants admit that TPG Dynamic Credit Income Master Fund, L.P. is a limited partnership formed under the laws of the Cayman Islands. Paragraph 37 otherwise states legal conclusions as to which no response is required.

38.     The TPG-AG Defendants admit that AG Credit Solutions Fund II Co-Investment, L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 38 otherwise states legal conclusions as to which no response is required.

39.     The Oaktree Defendants admit that Oaktree Opportunities Fund XI Holdings (Delaware), L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 39 otherwise states legal conclusions as to which no response is required.

40.     The Oaktree Defendants admit that Oaktree Opportunities Fund XII Holdings (Delaware), L.P. is a limited partnership organized under the laws of the State of Delaware. Paragraph 40 otherwise states legal conclusions as to which no response is required.

41.     Defendants admit that Trinseo Materials merged with Trinseo Holdings in December 2024 (with Trinseo Holdings as the surviving entity), deny that Trinseo Holdings is a wholly owned subsidiary of Trinseo S.A., and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.

42. Defendants deny that Luxco SPV is an indirect wholly owned subsidiary of Trinseo PLC, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42.

43. Defendants deny that Trinseo Luxco S.à r.l. ("Trinseo Luxco") is an indirect wholly owned subsidiary of Trinseo PLC, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43.

44. Defendants deny that Trinseo Materials Finance, Inc. is a wholly owned subsidiary of Trinseo S.A., and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44.

45. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45.

46. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.

## FACTUAL BACKGROUND

47. Defendants admit the allegations in Paragraph 47.

48. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48, and on that basis deny them.

49. Defendants admit the allegations in Paragraph 49.

50. Paragraph 50 purports to describe and characterize the OpCo Credit Agreement and related guarantees, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants admit that, prior to the consummation of the 2023 refinancing, the OpCo Loan Parties included the Debtors' main operating entities in the U.S., but deny that the OpCo Loan Parties at that time included the Debtors' main operating entities internationally.

51.     Paragraph 51 purports to describe the Debtors' capital structure and the terms of various debt instruments, and Defendants respectfully refer the Court to the OpCo Credit Agreement and the other referenced instruments for their true and complete terms. Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51.

52.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52.

53.     Paragraph 53 purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 53.

54.     Paragraph 54 (including its footnote) purports to characterize, describe, and quote the OpCo Credit Agreement, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 54.

55.     Paragraph 55 purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 55.

56.     Paragraph 56 purports to characterize, describe, and quote the OpCo Credit Agreement, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 56.

57.     Paragraph 57 purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 57.

58.     Paragraph 58 purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 58.

59.     Paragraph 59 purports to characterize, describe, and quote the OpCo Credit Agreement, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 59.

60.     Paragraph 60 purports to characterize, describe, and quote the OpCo Credit Agreement, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 60.

61.     Paragraph 61 purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 61.

62.     Defendants deny the allegations in Paragraph 62.

63.     Defendants deny that the Debtors' financial statements showed negative book equity in the summer of 2023, but admit that the Debtors faced financial headwinds from geopolitical and macroeconomic events in the years following the OpCo Credit Agreement. Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63, and on that basis deny them.

64.     Defendants admit that at the end of 2022, Debtors owed $663.4 million on the 2024 OpCo Term Loans and $500 million on the 2025 Unsecured Notes, but otherwise deny the allegations in Paragraph 64.

65.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65, and on that basis deny them.

66.    Defendants admit that in 2023, after a competitive auction process, the Debtors obtained $1.077 billion in financing from the Super HoldCo Lenders. Defendants otherwise deny the allegations in Paragraph 66.

67.    Defendants admit that Luxco SPV was created to facilitate a refinancing transaction in 2023, admit that Luxco SPV is presently directly owned by Trinseo PLC, but deny that Luxco SPV was directly owned by Trinseo PLC in 2023 and otherwise deny the allegations in Paragraph 67.

68.    Defendants admit that (i) Luxco SPV made a $125 million intercompany loan to Trinseo Luxco, (ii) Trinseo Luxco used that $125 million to make an equity investment in Trinseo Holdings, (iii) Trinseo Holdings used that $125 million to make an equity investment in Trinseo Materials, (iv) Trinseo Luxco merged with Trinseo Holdings fifteen (15) months after such equity investments, and (v) Trinseo Luxco became a party to the OpCo Credit Agreement fifteen (15) months after such equity investments, but otherwise deny the allegations in Paragraph 68.

69.    Defendants admit that (i) Trinseo LLC transferred the AmSty Equity to its direct subsidiary, Trinseo NA Finance LLC, which transferred the AmSty Equity to its direct subsidiary, Trinseo NA Finance SPV LLC, and that (ii) Trinseo NA Finance LLC and Trinseo NA Finance SPV LLC are "Unrestricted Subsidiaries" under the OpCo Credit Agreement, but otherwise deny the allegations in Paragraph 69.

70.    Paragraph 70 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Defendants admit that Trinseo NA Finance LLC is a guarantor and Trinseo NA Finance SPV LLC is a co-borrower under the Super HoldCo Loans, and that the entities identified in the footnote (i) were not obligors of the funded debt of the OpCo Loan Parties and (ii) provided a limited guaranty of the Super

HoldCo capped at $340 million in 2023 (the "Super HoldCo Foreign Guaranty"), but otherwise deny the allegations in Paragraph 70.

71.     Paragraph 71 (including its footnote) purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants admit that the proceeds of the $125 million equity investment in Trinseo Materials and the $948 million of intercompany loans made by Luxco SPV to Trinseo Materials were used to repay $660 million of term loans due 2024 under the OpCo Credit Agreement (the "2024 Term Loans") and $385 million of unsecured notes of the OpCo Loan Parties due 2025 (the "2025 Notes"), but otherwise deny the allegations in Paragraph 71.

72.     Paragraph 72 purports to characterize documents produced in discovery, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations in Paragraph 72.

73.     Paragraph 73 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 73 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 73.

74.     Paragraph 74 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 74 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 74.

75. Paragraph 75 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 75also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 75.

76. Paragraph 76 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 76 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 76.

77. Paragraph 77 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 77 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 77.

78. Paragraph 78 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 78 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 78.

79. Paragraph 79 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 79 also purports to characterize and describe the OpCo Credit Agreement, and Defendants

respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 79.

80.     Paragraph 80 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 80 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 80.

81.     Paragraph 81 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 81 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 81.

82.     Paragraph 82 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 82 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 82.

83.     Paragraph 83 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 83 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 83.

84.    Paragraph 84 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 84 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 84.

85.    Paragraph 85 purports to characterize documents produced in discovery, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations in Paragraph 85.

86.    Paragraph 86 purports to characterize documents produced in discovery, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations in Paragraph 86.

87.    Defendants deny the allegations in Paragraph 87.

88.    Paragraph 88 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 88 also purports to characterize and describe the 2023 transaction documents and OpCo Credit Agreement, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations and characterizations in Paragraph 88.

89.    Paragraph 89 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 89 also purports to characterize and describe the 2023 transaction documents and OpCo Credit Agreement, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations and characterizations in Paragraph 89.

90. Paragraph 90 purports to characterize documents produced in discovery, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations in Paragraph 90.

91. Paragraph 91 asserts legal conclusions as to which no response is required. Paragraph 91 also purports to characterize and describe the 2023 transaction documents and OpCo Credit Agreement, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations and characterizations in Paragraph 91.

92. Paragraph 92 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 92 also purports to characterize and describe the 2023 transaction documents and OpCo Credit Agreement, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations and characterizations in Paragraph 92.

93. Paragraph 93 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 93 also purports to characterize and describe the 2023 transaction documents and OpCo Credit Agreement, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations and characterizations in Paragraph 93.

94. Paragraph 94 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 94 also purports to characterize and describe the 2023 transaction documents and OpCo Credit Agreement, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations and characterizations in Paragraph 94.

95.     Paragraph 95 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 95 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 95.

96.     Paragraph 96 asserts legal conclusions as to which no response is required. To the extent that a response is found to be required, Defendants deny those allegations. Paragraph 96 also purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that document for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 96.

97.     Defendants deny that they took advantage of any conflict to cause the Debtors to enter into any transaction.  Defendants otherwise lack knowledge or sufficient information to form a belief as to the truth of the allegations in Paragraph 97, and on that basis deny such allegations. Defendants otherwise deny the allegations in Paragraph 97.

98.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98, and on that basis deny such allegations.

99.     Defendants deny the allegations in Paragraph 99.

100.    Defendants deny the allegations in Paragraph 100.

101.    Defendants admit that, after the competitive process engaged in by the Debtors to refinance all $660 million of the 2024 Term Loans and $385 million of the 2025 Notes, the interest burden on the new debt was higher (though the principal amount of new debt was $97 million lower).  Defendants otherwise deny the allegations in Paragraph 101.

102.     Paragraph 102 purports to characterize and describe the terms of the Super HoldCo Loans, and Defendants respectfully refer the Court to the Super HoldCo Credit Agreement for its true and complete terms. Defendants admit that the interest on the Super HoldCo Loan is SOFR plus 8.50%, subject to a 3.00% SOFR floor and other components, but otherwise deny the allegations and characterizations in Paragraph 102.

103.     Defendants deny the allegations in Paragraph 103.

104.     Defendants deny the allegations in Paragraph 104.

105.     Defendants deny the allegations in Paragraph 105.

106.     Defendants deny the allegations in Paragraph 106.

107.     Defendants admit that Luxco SPV did not lend money to any entity other than the OpCo Loan Parties, but otherwise deny the allegations in Paragraph 107.

108.     Paragraph 108 purports to describe the Debtors' capital structure and the terms of the referenced instruments, and Defendants respectfully refer the Court to those instruments for their true and complete terms. Defendants deny that the $1.077 billion in Super HoldCo Loans were obligations of the OpCo Loan Parties and otherwise lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 108.

109.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109, and on that basis deny them.

110.     Defendants admit that the OpCo Loan Parties expressed a desire in 2024 to capture discount on their unsecured notes due 2029 and to retire the outstanding 2025 Notes. Defendants otherwise deny the allegations in Paragraph 110.

111.     Defendants admit that an amendment to the OpCo Credit Agreement was entered into in 2025, but otherwise deny the allegations in Paragraph 111.

112.     Defendants deny the allegations in Paragraph 112.

113.     Defendants admit that Aristech Surfaces LLC and Altuglas LLC were designated as "Unrestricted Subsidiaries" under the OpCo Credit Agreement and thereafter became guarantors of the Super HoldCo Loans and the new second lien notes secured by the same collateral, but otherwise deny the allegations in Paragraph 113.

114.     Defendants admit the allegations in Paragraph 114.

115.     Paragraph 115 purports to characterize and describe the OpCo Credit Agreement, and Defendants respectfully refer the Court to that agreement for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 115 (including the footnote).

116.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations that letters relating to the 2025 refinancing transactions were sent to the agent on the OpCo Credit Agreement prior to the 2023 refinancing transactions, and on that basis deny such allegations. Defendants otherwise admit the allegations in Paragraph 116.

117.     Defendants admit that the $340 million cap on the Super HoldCo Foreign Guaranty was removed as part of the 2025 refinancing transactions, but otherwise deny the allegations in Paragraph 117.

118.     Defendants deny the allegations in Paragraph 118.

119.     Defendants deny the allegations in Paragraph 119.

120.     Defendants deny the allegations in Paragraph 120.

121.     Defendants admit that an intercreditor agreement (the "Four-Party ICA") was entered into by Deutsche Bank in connection with the 2025 refinancing transactions and that the Four-Party ICA governs, among other things, the relationship between the superpriority revolving

credit facility (the "OpCo Senior RCF") and the obligations under the OpCo Credit Agreement. Defendants otherwise deny the allegations in Paragraph 121.

122. Paragraph 122 contains opinions and legal conclusions as to which no response is required. To the extent a response is required, Defendants respectfully refer the Court to the Four-Party ICA for its terms and deny the allegations in Paragraph 122.

123. Paragraph 123 contains opinions and legal conclusions as to which no response is required. To the extent a response is required, Defendants respectfully refer the Court to the Four-Party ICA for its terms and deny the allegations in Paragraph 123.

124. Paragraph 124 contains opinions and legal conclusions as to which no response is required. To the extent a response is required, Defendants respectfully refer the Court to the Four-Party ICA for its terms and deny the allegations in Paragraph 124.

125. Defendants admit that the Four-Party ICA and the related amendment to the OpCo Credit Agreement required approval by holders of a majority of loans outstanding under the OpCo Credit Agreement ("Required Lenders"), but otherwise deny the allegations in Paragraph 125.

126. Defendants admit that the loans held by Luxco SPV were used to secure Required Lenders' approval for the Four-Party ICA and the related amendment to the OpCo Credit Agreement, but otherwise deny the allegations in Paragraph 126.

127. Defendants deny the allegations in Paragraph 127.

128. Defendants deny the allegations in Paragraph 128.

129. Defendants deny the allegations in Paragraph 129.

130. Defendants deny the allegations in Paragraph 130.

131. Defendants deny the allegations in Paragraph 131.

132.     Defendants admit that S&P downgraded the company's credit rating in January 2025.

133.     Defendants admit that the Debtors' financial statements showed a net loss and negative free cash flow in 2025 and respectfully refer the Court to such documents for a complete and accurate statement of their contents. Defendants otherwise deny the allegations in Paragraph 133.

134.     Defendants admit that Trinseo received a notice of noncompliance from the New York Stock Exchange in December 2025, and S&P Global Ratings downgraded Trinseo in November 2025.

135.     Defendants admit that the Debtors and Defendants engaged in restructuring discussions in January 2026.

136.     Defendants deny the allegations in Paragraph 136.

137.      Defendants admit that they acquired substantially all outstanding loans under the OpCo Senior RCF at par. To the extent Paragraph 137 characterizes the terms of any intercreditor agreement, other debt documents and/or documents produced in discovery, Defendants respectfully refer the Court to the relevant documents for their true and complete terms. Defendants otherwise deny the allegations in Paragraph 137.

138.     Paragraph 138 purports to characterize documents produced in discovery, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations in Paragraph 138.

139.     Paragraph 139 purports to characterize documents produced in discovery, and Defendants respectfully refer the Court to those documents for their true and complete terms. Defendants otherwise deny the allegations in Paragraph 139.

140.    Defendants deny the allegations in Paragraph 140.

141.    Defendants deny the allegations in Paragraph 141.

142.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142, and on that basis deny them.

143.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 143, and on that basis deny them.

144.    Paragraph 144 purports to characterize and describe an amendment to the 2025 Credit Agreement, and Defendants respectfully refer the Court to that amendment for its true and complete terms. Defendants otherwise deny the allegations in Paragraph 144.

145.    Paragraph 145 asserts legal conclusions and conclusory allegations of wrongdoing as to which no response is required. To the extent that a response is found to be required, Defendants deny the allegations in Paragraph 145.

## COUNT I

### DISALLOWANCE OF CLAIMS UNDER 11 U.S.C § 502
### (Against All Defendants)

146.    Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

147.    Paragraph 147 asserts a legal conclusion as to which no response is required. To the extent a response is required, Defendants respectfully refer the Court to 11 U.S.C. § 502(b)(1) for its terms and deny any characterization inconsistent therewith.

148.    Defendants admit that the OpCo Credit Agreement, as amended, is a valid and binding contract between the parties.

149.    Paragraph 149 asserts legal conclusions and conclusory allegations of wrongdoing as to which no response is required. To the extent that a response is found to be required,

Defendants deny the allegations in Paragraph 149.

150.   Paragraph 150 asserts legal conclusions and conclusory allegations of wrongdoing as to which no response is required. To the extent that a response is found to be required, Defendants deny the allegations in Paragraph 150.

151.   Paragraph 151 asserts legal conclusions and conclusory allegations of wrongdoing as to which no response is required. To the extent that a response is found to be required, Defendants deny the allegations in Paragraph 151.

152.   Paragraph 152 asserts legal conclusions and conclusory allegations of wrongdoing as to which no response is required. To the extent that a response is found to be required, Defendants deny the allegations in Paragraph 152.

## <u>COUNT II</u>

### RECHARACTERIZATION OF INTERCOMPANY LOANS UNDER 11 U.S.C. § 502
### (Against Defendant Luxco SPV)

153.   This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

154.   This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

155.   This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their

foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

156.    This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

## COUNT III

### EQUITABLE SUBORDINATION OF INTERCOMPANY LOAN CLAIMS
### (Against Defendant Luxco SPV)

157.    This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

158.    This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

159.    This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

160.    This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their

foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

161.    This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

162.    This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

163.    This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

164.    This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

165.    This Count is not asserted against the answering Defendants, and no response is therefore required of them. To the extent a response is required, Defendants incorporate their foregoing responses, deny the allegations, and respectfully refer the Court to the referenced agreements and instruments for their true and complete terms.

## COUNT IV

### EQUITABLE SUBORDINATION OF RCF CLAIMS
### (Against the Super Holdco Lenders)

166.     Defendants incorporate their responses to the foregoing paragraphs as though fully set forth herein.

167.     Paragraph 167 asserts legal conclusions and conclusory allegations of wrongdoing as to which no response is required. To the extent that a response is found to be required, Defendants deny the allegations in Paragraph 167.

168.     Paragraph 168 asserts legal conclusions and conclusory allegations of wrongdoing as to which no response is required. To the extent that a response is found to be required, Defendants deny the allegations in Paragraph 168.

169.     Paragraph 169 asserts legal conclusions and conclusory allegations of wrongdoing as to which no response is required. To the extent that a response is found to be required, Defendants deny the allegations in Paragraph 169.

170.     Paragraph 170 asserts legal conclusions and conclusory allegations of wrongdoing as to which no response is required. To the extent that a response is found to be required, Defendants deny the allegations in Paragraph 170.

171.     Paragraph 171 asserts legal conclusions and conclusory allegations of wrongdoing as to which no response is required. To the extent that a response is found to be required, Defendants deny the allegations in Paragraph 171.

### PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any of the relief requested in subparts (a) through (f) of the Prayer for Relief, or to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses. Defendants do not admit that they bear the burden of proof, persuasion, or production with respect to any issue. Defendants reserve the right to assert any additional defenses not asserted herein, including those revealed through discovery, further investigation, amendment of the Complaint, or otherwise.

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part under that certain Mutual Release Agreement dated as of January 17, 2025.

### SECOND AFFIRMATIVE DEFENSE

The challenged transactions were authorized, consented to, certified, and/or ratified by the administrative agent, the Required Lenders, and the Debtors' boards and officers, as and to the extent contractually required; Plaintiffs had notice and an opportunity to object and failed timely to do so. Further, Plaintiffs' claims are barred by their express contractual consent to the challenged transactions, which authorizes the transactions and structural features Plaintiffs now challenge. Plaintiffs are therefore deemed to have consented to, and are estopped from challenging, the transactions effected in reliance on those provisions.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, ratification, acquiescence and in pari delicto, including among other reasons, by reason of Plaintiffs' delay in asserting the alleged breaches first arising in September 2023.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' equitable claims, including the recharacterization and equitable subordination claims, are barred by the doctrines of unclean hands and in pari delicto.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' damages claims are barred in whole and in part by Plaintiffs' failure to mitigate any damages.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, ratification, and affirmative consent, including without limitation by reason of the express terms of the Four-Party ICA and the other loan documents to which Plaintiffs (or the predecessor holders of the loans Plaintiffs now own) are bound. Plaintiffs and their predecessors-in-interest expressly agreed to, or are deemed to have agreed to, the priority, payment, enforcement, buy-out, and DIP-financing provisions of the Four-Party ICA and the other loan documents that they now challenge, and are bound by those agreements and estopped from asserting claims inconsistent with them.

## SEVENTH AFFIRMATIVE DEFENSE

Without prejudice to the First Affirmative Defense, and to the extent any provision of the Mutual Release Agreement dated as of January 17, 2025 is held unenforceable, narrowed, rescinded, set aside, or otherwise determined not to bar any claim asserted in the Complaint, Defendants expressly reserve, and do not waive, all rights, claims, defenses, counterclaims, setoff, recoupment, and remedies that Defendants would have had absent the Mutual Release, including without limitation against Plaintiffs, the lenders they purport to represent, and their respective affiliates, predecessors, successors, and assigns.

## EIGHTH AFFIRMATIVE DEFENSE

Defendants reserve the right to amend this Answer and to assert additional affirmative and other defenses as may become apparent during the course of this proceeding.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor and against Plaintiffs as follows: (a) dismissing the Amended Complaint in its entirety, with prejudice; (b) denying each and every form of relief sought in the Amended Complaint, including the relief requested in subparts (a) through (f) of the Prayer for Relief; (c) declaring, to the extent appropriate, that the 2023 LME, the 2023 Amendment, the 2023 Intercompany Loan, the 2025 LME, the 2025 Amendment, the 2025 Intercompany Loan, the OpCo Senior RCF, and the Four-Party ICA are valid, binding, and enforceable in accordance with their terms; (d) awarding the Defendants their costs, expenses, and attorneys' fees as permitted by contract and applicable law; and (e) granting such other and further relief as the Court deems just and proper.

## RESTATED COUNTERCLAIM

## NATURE OF THE COUNTERCLAIM

1. By commencing this action and seeking to unwind the transactions giving rise to liens securing the OpCo Senior RCF Lender Defendants' claims, the OpCo Junior Term Lender Plaintiffs breached the express provisions of the Intercreditor and Subordination Agreement dated as of January 17, 2025 (the "Four-Party ICA"), which the OpCo Senior RCF Lender Defendants are here permitted to enforce.

2. The OpCo Junior Term Lender Plaintiffs hold OpCo Junior Term Loans (as defined below), which constitute "Junior Priority Obligations" under the Four-Party ICA. The OpCo Senior RCF Lender Defendants hold the "Original Superpriority Obligations" under the Four-Party ICA—*i.e.,* the OpCo RCF Obligations—and are "Senior Priority Secured Parties" pursuant to the express terms of that agreement. And as is market-standard for intercreditor agreements of this

30

kind, the holders of Junior Priority Obligations are prohibited from contesting, directly or indirectly, the liens held by Senior Priority Secured Parties.

3.      Specifically, in Section 2.2(a)(i) of the Four-Party ICA, Deutsche Bank AG New York Branch, in its capacity as Administrative Agent for the OpCo Junior Term Loans (the "OpCo Junior Agent") agreed—"for and on behalf of itself and the Creditors represented thereby"—that it and they "shall not (and hereby waive[] any right to) take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Liens of any Secured Party that is a Senior Priority Secured Party with respect to the Junior Priority Obligations of such Agent in respect of the Collateral or the provisions of this Agreement."[3]

4.      This no-challenge provision was a material, bargained-for term of the Four-Party ICA, and was included to protect the priority of the Senior Priority Secured Parties by foreclosing the precise risk that a Junior Priority creditor might attempt to circumvent its agreed subordination. The scope of this provision is broad and intentionally so. It reaches challenges made "directly or indirectly" and specifically protects both "the validity, priority, enforceability, or perfection of the Liens of any … Senior Priority Secured Party," as well as "the provisions of [the Four-Party ICA]" itself.

5.      In direct violation of this provision, the OpCo Junior Term Lender Plaintiffs commenced this Adversary Proceeding for the purposes of (i) voiding the Four-Party ICA, (ii) voiding the "Liens" of the OpCo Senior RCF Lender Defendants as Senior Priority Secured Parties are "void *ab initio*," (iii) subordinating the OpCo Senior RCF Lender Defendants' secured

---

[3]      Deutsche Bank AG New York Branch also serves as the Administrative Agent for the OpCo Senior RCF Obligations and, in such capacity, is referred to herein as the "OpCo Senior Agent."

claims under the OpCo Senior RCF, and (iv) otherwise contesting and challenging—directly and indirectly—the validity, priority, and enforceability of the Senior Priority Secured Parties' Liens and the provisions of the Four-Party ICA itself.

6.      Each of these requests is a challenge that the OpCo Junior Term Lender Plaintiffs waived pursuant to the express terms of the Four-Party ICA, and the OpCo Junior Term Lender Plaintiffs' commencement of and continued pursuit of this Adversary Proceeding thus constitutes a clear and indefensible breach of the Four-Party ICA.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1334. These counterclaims arise out of the same transactions and occurrences as the claims asserted in the Complaint and are within the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

8.      This is a core proceeding under 28 U.S.C. § 157(b). To the extent any counterclaim is determined to be non-core, the OpCo Senior RCF Lender Defendants consent to the entry of final orders and judgment by this Court.

9.      Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

10.      Pursuant to Rule 7008-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas, the OpCo Senior RCF Lender Defendants consent to the entry of a final judgment or order with respect to these counterclaims if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties. By commencing this adversary proceeding, the OpCo Junior Term Lender Plaintiffs have consented to this Court's adjudication of compulsory counterclaims arising from the same transactions and occurrences.

**THE PARTIES**

11.     Defendant/Counterclaim-Plaintiff Apollo Accord+ II Aggregator A, L.P. is an exempted limited partnership formed under the laws of the Cayman Islands, with its principal place of business in New York, New York.

12.     Defendant/Counterclaim-Plaintiff Apollo Calliope Fund LP is a limited partnership formed under the laws of the Cayman Islands, with its principal place of business in New York, New York.

13.     Defendant/Counterclaim-Plaintiff Apollo Centre Street Partnership, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

14.     Defendant/Counterclaim-Plaintiff Apollo Excelsior Co-Invest, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

15.     Defendant/Counterclaim-Plaintiff Apollo Lincoln Fixed Income Fund, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

16.     Defendant/Counterclaim-Plaintiff Apollo Moultrie Credit Fund, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

17.     Defendant/Counterclaim-Plaintiff AG Credit Solutions Master Fund II A, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

33

18.     Defendant/Counterclaim-Plaintiff TPG AG Corporate Credit Opportunities Fund, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

19.     Defendant/Counterclaim-Plaintiff TPG AG Credit Solutions Avanti Co-Invest, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

20.     Defendant/Counterclaim-Plaintiff AG Cataloochee, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

21.     Defendant/Counterclaim-Plaintiff AG CSF 2023 Overflow Fund (G) LP is an exempted limited partnership formed under the laws of the Cayman Islands, with its principal place of business in New York, New York.

22.     Defendant/Counterclaim-Plaintiff AG Potomac Fund, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

23.     Defendant/Counterclaim-Plaintiff TPG AG Centre Street Partnership, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

24.     Defendant/Counterclaim-Plaintiff TPG Dynamic Credit Income Master Fund, L.P. is a limited partnership formed under the laws of the Cayman Islands, with its principal place of business in New York, New York.

25. Defendant/Counterclaim-Plaintiff AG Credit Solutions Fund II Co-Investment, L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

26. Defendant/Counterclaim-Plaintiff Oaktree Opportunities Fund XI Holdings (Delaware), L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in Los Angeles, California.

27. Defendant/Counterclaim-Plaintiff Oaktree Opportunities Fund XII Holdings (Delaware), L.P. is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in Los Angeles, California.

28. Plaintiff CastleKnight Master Fund LP is a Cayman Islands limited partnership, managed by CastleKnight Management LP. CastleKnight Master Fund LP is the beneficial owner of $271,809,527 in face value of 2028 OpCo Junior Term Loans.

29. Plaintiff Elevation CLO 2013-1, Ltd; Elevation CLO 2016-5, Ltd; Elevation CLO 2020-11, Ltd; Elevation CLO 2021-12, Ltd; Elevation CLO 2021-13, Ltd; Elevation CLO 2021-14, Ltd; Elevation CLO 2021-15, Ltd; and Elevation CLO 2022-16, Ltd (collectively, the "ArrowMark Funds") are the funds managed by ArrowMark Partners, each with a principal place of business in Denver, Colorado. The ArrowMark Funds are the beneficial owners of $14,423,155 in face value of 2028 OpCo Junior Term Loans.

30. Plaintiff Signal Peak CLO 4, Ltd.; Signal Peak CLO 5, Ltd.; Signal Peak CLO 7, Ltd.; Signal Peak CLO 8, Ltd.; Signal Peak CLO 9, Ltd.; Signal Peak CLO 10, Ltd.; and Signal Peak CLO 12, Ltd. (collectively, the "Signal Peak Funds") are funds managed by ORIX Advisers LLC, each with a principal place of business in Dallas, Texas. The Signal Peak Funds are the beneficial owners of $7,451,387 in face value of 2028 OpCo Junior Term Loans.

**FACTUAL ALLEGATIONS**

**A.  The Intercreditor Agreement and the Agreed Priority Scheme**

31.    The OpCo Junior Term Lender Plaintiffs are holders of the OpCo Junior Term Loans, which were issued pursuant to that certain Credit Agreement, dated September 6, 2017 (as amended by that certain 2023 Incremental and Refinancing Amendment, dated as of September 8, 2023, that certain 2025 Incremental Amendment, dated as of January 17, 2025, that certain 2026 Grace Period Amendment, dated as of February 16, 2026, that certain 2026 Limited Waiver and Amendment, dated as of March 19, 2026, and that certain Second Amendment, dated as of May 13, 2026, and as further amended, restated, modified, or supplemented from time to time, the "OpCo Junior Term Loan Credit Agreement," and the facility thereunder, the "OpCo Junior Term Loan Facility," and the loans thereunder, the "OpCo Junior Term Loans").

32.    The OpCo Senior RCF Lender Defendants are holders of the OpCo Senior RCF Obligations issued pursuant to that certain Credit Agreement, dated as of January 17, 2025 (as amended, restated, or otherwise modified from time to time, the "OpCo Senior RCF Credit Agreement," and the facility thereunder, the "OpCo Senior RCF," and the revolving loans, any risk participations in letters of credit, and other obligations thereunder, the "OpCo Senior RCF Obligations," and all claims on account of the OpCo Senior RCF Obligations, the "OpCo Senior RCF Claims").

33.    The Four-Party ICA is a multi-party agreement governing the rights and obligations of the OpCo Senior RCF Lenders, the OpCo Term Lenders, the Super HoldCo 1L Term Lenders, and the 2029 2L Noteholders with respect to, among other things, certain collateral (the "OpCo Collateral"),[4] as well as the rights, obligations, and duties of those parties in any chapter 11

---

[4]    The Four-Party ICA also governs the rights of the Super HoldCo 1L Lenders and the 2029 2L Noteholders with respect to certain additional collateral not at issue here.

proceeding undertaken by entities that are obligors under the OpCo Junior Term Loan Credit Agreements, certain of whom are debtors in these chapter 11 proceedings.

34.     Pursuant to the Four-Party ICA, the OpCo Junior Term Loans constitute "OpCo Facility Obligations," which (with respect to the OpCo Senior RCF Obligations) in turn constitute Junior Priority Obligations. As such, holders of the OpCo Junior Term Loans, including the OpCo Junior Term Lender Plaintiffs, are referred to under the Four-Party ICA as holders of Junior Priority Obligations.

35.     The OpCo Senior RCF Obligations, by contrast, constitute "Superpriority Obligations," under the Four-Party ICA, which (with respect to the OpCo Facility Obligations) in turn constitute Senior Priority Obligations. And holders of the OpCo Senior RCF Obligations, like the OpCo Senior RCF Lender Defendants here, are referred to under the Four-Party ICA as "Senior Priority Secured Parties."

36.     The Four-Party ICA was entered into by and between Deutsche Bank AG New York Branch ("Deutsche Bank"), as Original Superpriority Agent, Deutsche Bank, as Original OpCo Facility Agent, Alter Domus (US) LLC ("Alter Domus" and together with Deutsche Bank, the "Agents"), as Original Super Holdco Facility Agent, and Alter Domus, as Original Super Holdco Notes Agent.

37.     Pursuant to Section 4.03 of the Four-Party ICA, the OpCo Facility Obligations are "subordinate and junior in right of payment" to the Superpriority Obligations. In furtherance of such subordination, the Four-Party ICA provides that "under no circumstances shall any OpCo Facility Creditor assert that it has any claim with respect to the Opco Facility Obligations … on parity with or prior to the claims of the Superpriority Creditors."

**B.  The No-Challenge Covenant in Section 2.2(a)(i)**

38.     Section 2.2(a)(i) of the Four-Party ICA contains an unambiguous covenant by each of the OpCo Senior Agent and the OpCo Junior Agent on behalf of themselves and the creditors they represent, not to challenge either the Senior Secured Parties' liens or the Four-Party ICA itself. It states as follows:

> Each Agent, for and on behalf of itself and the Creditors represented thereby, agrees that it and they shall not (and hereby waives any right to) take any action to contest or challenge (or assist or support any other Person in contesting or challenging), directly or indirectly, whether or not in any proceeding (including in any Insolvency Proceeding), the validity, priority, enforceability, or perfection of the Liens of any Secured Party that is a Senior Priority Secured Party with respect to the Junior Priority Obligations of such Agent in respect of the Collateral or the provisions of this Agreement.

39.     The no-challenge provision was a material, bargained-for term of the Four-Party ICA, included to protect the priority of the Senior Priority Secured Parties by foreclosing the risk that a Junior Priority creditor might attempt to circumvent its agreed subordination—not by contesting a priority waterfall directly, but by attacking the validity, perfection, or enforceability of the senior liens on which that priority depends.

40.     By its terms, Section 2.2(a)(i) binds not only the Agents but also "the Creditors represented thereby."  The OpCo Junior Agent agreed to the covenant "for and on behalf of itself and the Creditors represented thereby," which thus includes the OpCo Junior Term Lender Plaintiffs, as holders of the OpCo Junior Term Loans and, by extension, Junior Priority Obligations.

41.     The OpCo Junior Term Lender Plaintiffs explicitly authorized and instructed the OpCo Junior Agent to bind them by signing the OpCo Junior Term Loan Credit Agreement, which provides as follows in Section 10.22(b):

> EACH LENDER AUTHORIZES AND INSTRUCTS THE ADMINISTRATIVE AGENT TO ENTER INTO THE RELEVANT INTERCREDITOR AGREEMENT

ON BEHALF OF SUCH LENDER, AND TO TAKE ALL ACTIONS (AND EXECUTE ALL DOCUMENTS) REQUIRED (OR DEEMED ADVISABLE) BY IT IN ACCORDANCE WITH THE TERMS OF SUCH INTERCREDITOR AGREEMENT(S). EACH LENDER AGREES TO BE BOUND BY AND WILL TAKE NO ACTIONS CONTRARY TO THE PROVISIONS OF THE RELEVANT INTERCREDITOR AGREEMENT.

42.     The scope of Section 2.2(a)(i) of the Four-Party ICA is broad and intentionally so. It prohibits any action to "contest or challenge," as well as any action to "assist or support any other Person in contesting or challenging." It reaches challenges made "directly or indirectly" and "whether or not in any proceeding (including in any Insolvency Proceeding)." It protects "the validity, priority, enforceability, or perfection of" two distinct things: (i) "the Liens of any … Senior Priority Secured Party," and (ii) "the provisions of this Agreement."

**C. The OpCo Junior Term Lender Plaintiffs' Complaint Breaches Section 2.2(a)(i)**

43.     The OpCo Junior Term Lender Plaintiffs breached Section 2.2(a)(i) of the Four-Party ICA when, on May 26, 2026, its members commenced this adversary proceeding by filing the Complaint. The Complaint takes "action to contest or challenge"—and to "assist or support" the other named parties in contesting or challenging—both the validity, priority, and enforceability of the OpCo Senior RCF Lender Defendants' Liens and the provisions of the Four-Party ICA.  It breaches the Four-Party ICA in at least three separate ways.

44.     As an initial matter, the Complaint directly challenges the provisions of the Four-Party ICA directly and thus constitutes a direct challenge to "the provisions" of the Four-Party ICA itself. Count I seeks a declaratory judgment that the Four-Party ICA "[is] void *ab initio*, or in the alternative [is] voidable and should be rescinded." A request to declare the ICA void *ab initio* is, by definition, an action to "contest or challenge … the provisions of th[e] Agreement."

45.     The Complaint also challenges the validity, priority, and enforceability of the OpCo Senior RCF Lender Defendants' Liens. Count IV seeks the equitable subordination of the OpCo

Senior RCF Lender Defendants' claims under the OpCo Senior RCF "below the AHG's secured claims." An action to subordinate the Senior Priority Secured Parties' secured claims and to strip them of their bargained-for priority is an action to "contest or challenge … the … priority [and] enforceability … of the Liens" of a Senior Priority Secured Party with respect to the Junior Priority Obligations.

46.     Finally, the Complaint further attacks the Four-Party ICA's priority scheme overall, alleging that the RCF Facility's "super-priority" status is invalid and that the Four-Party ICA is "off-market" and unenforceable. These allegations and the relief premised thereon are additional actions to contest and challenge the validity, priority, and enforceability of the OpCo Senior RCF Lender Defendants' Liens and the provisions of the Four-Party ICA, which thus constitute further evidence of the OpCo Junior Term Lender Plaintiffs' breach.

**D.  The OpCo Senior RCF Lender Defendants Are Intended Third-Party Beneficiaries**

47.     The Four-Party ICA was made for the direct benefit of the OpCo Senior RCF Lender Defendants. Section 7.10 of the Four-Party ICA provides that the "Agreement and the rights and benefits hereof shall inure to the benefit of each of the parties hereto and its respective successors and assigns and shall inure to the benefit of each of the Agents, the Creditors, and the Borrowers and the other Loan Parties."

48.     The OpCo Senior RCF Lender Defendants are Creditors and Senior Priority Secured Parties under the Four-Party ICA. The rights and benefits of the Four-Party ICA—including the protections of Section 2.2(a)(i)—therefore inure expressly to their benefit, and the OpCo Senior RCF Lender Defendants are thus permitted to bring the instant claim for breach.

## COUNT I

### BREACH OF CONTRACT — SECTION 2.2(A)(I) OF THE ICA
### (AGAINST THE OPCO JUNIOR TERM LENDER PLAINTIFFS)

49.     The OpCo Senior RCF Lender Defendants repeat and reallege each of the foregoing allegations as if fully set forth herein.

50.     The Four-Party ICA is a valid and binding contract.

51.      The OpCo Senior RCF Lender Defendants are intended third-party beneficiaries of the Four-Party ICA and Creditors to whom the rights and benefits of the Four-Party ICA expressly inure under Section 7.10. They are therefore entitled to enforce the Four-Party ICA, including the no-challenge covenant in Section 2.2(a)(i).

52.     The OpCo Junior Term Lender Plaintiffs are bound by Section 2.2(a)(i), which the OpCo Junior Agent, as their Agent, agreed to "for and on behalf of itself and the Creditors represented thereby."

53.     The OpCo Senior RCF Lender Defendants have performed, and continue to perform, their obligations under the Four-Party ICA, and all conditions to the OpCo Junior Term Lender Plaintiffs' performance have occurred or been satisfied.

54.     The OpCo Junior Term Lender Plaintiffs breached Section 2.2(a)(i) by filing and prosecuting the Complaint, which takes action to contest and challenge—and to assist and support the other parties in contesting and challenging—directly and indirectly, in this proceeding, the validity, priority, enforceability, and perfection of the Liens of the OpCo Senior RCF Lender Defendants as Senior Priority Secured Parties with respect to the Junior Priority Obligations, as well as the provisions of the Four-Party ICA, including by seeking to declare the Four-Party ICA void *ab initio* and to equitably subordinate the OpCo Senior RCF Lender Defendants' secured claims.

55.      As a direct and proximate result of the AHG's breach, the OpCo Senior RCF Lender Defendants have suffered and will continue to suffer damages in an amount to be determined at trial, including attorneys' fees, costs, and expenses incurred in defending against the waived challenges, as well as damages for any harm to the OpCo Senior RCF or the recovery thereon.

## **PRAYER FOR RELIEF**

WHEREFORE, the OpCo Senior RCF Lender Defendants respectfully request that this Court enter judgment in their favor and against the OpCo Junior Term Lender Plaintiffs, and grant the following relief:

a.  On Count I, an award of compensatory damages in an amount to be determined at trial, including the attorneys' fees, costs, and expenses incurred by the OpCo Senior RCF Lender Defendants in defending against the challenges the OpCo Junior Term Lender Plaintiffs waived, as well as damages for any harm to the OpCo Senior RCF or the recovery thereon;

c.  Pre-judgment and post-judgment interest;

d.  Costs of this action pursuant to Bankruptcy Rule 7054; and

e.  Such other and further relief as the Court may deem just and proper.

*[Remainder of page intentionally left blank]*

Dated:  July 7, 2026
      Houston, Texas

*/s/ Charles Persons*
_____

**PAUL HASTINGS LLP**
Charles Persons (TX Bar No. 24060413)
2001 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:  (972) 936-7500
Facsimile:  (972) 936-7501
Email:    charlespersons@paulhastings.com

-and-

Kristopher M. Hansen (admitted *pro hac vice*)
Daniel A. Fliman (admitted *pro hac vice*)
Christopher M. Guhin (admitted *pro hac vice*)
Ryan P. Montefusco (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090
Email:    krishansen@paulhastings.com
        danfliman@paulhastings.com
        chrisguhin@paulhastings.com
        ryanmontefusco@paulhastings.com

*Counsel to the OpCo Senior RCF Lender Defendants*

**<u>Certificate of Service</u>**

I certify that on July 7, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Charles Persons*
Charles Persons